IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMEY MCKEE, | No. 4:23-CV-00181 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| M. GROTH, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JANUARY 10, 2024

Plaintiff Jamey McKee is a serial *pro se* litigant who was previously confined at the State Correctional Institution Rockview (SCI Rockview), in Bellefonte, Pennsylvania. McKee filed the instant *pro se* Section 1983[1] action claiming that four SCI Rockview officials violated his constitutional rights. Presently pending is Defendants' motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant Defendants' motion.

I. BACKGROUND

McKee is currently incarcerated in SCI Somerset.[2] His lawsuit concerns incidents at SCI Rockview that allegedly occurred in December 2022.[3]

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).
[2] *See* Doc. 20.
[3] *See generally* Doc. 1.

McKee first recounts that in May 2022, he filed a report under the Prison Rape Elimination Act (PREA) regarding an alleged sexual assault by a nonparty prison official.[4]  He claims that numerous prison officials retaliated against him for filing this PREA report.[5]  Many of these allegations of retaliation form the basis of a separate civil rights lawsuit McKee filed in this Court in 2022.[6]

The gravamen of the instant lawsuit deals with separate allegations of retaliation and excessive force by four SCI Rockview corrections officers: Michael Groth, William McCusker, Jonathan Lytle, and Nathan Anna.[7]  McKee alleges two purported incidents of retaliation: (1) a physical assault by all Defendants on December 29, 2022, allegedly in retaliation for McKee filing a PREA report, grievance, and lawsuit; and (2) a fabricated misconduct issued by Groth sometime after the alleged assault for filing a PREA report, grievance, and lawsuit.[8]  McKee additionally alleges that the purported retaliatory assault on December 29 constituted excessive force in violation of the Eighth Amendment.[9]

McKee sues all Defendants in their individual and official capacities.  He seeks retroactive declaratory relief that his rights were violated and an injunction against all Defendants "to cease their physical violence and threats toward [him]

---

[4] Doc. 1 ¶ 11.
[5] *Id.* ¶¶ 12-14, 17, 19.
[6] *See generally McKee v. SCI Rockview Officials*, No. 4:22-CV-01240 (M.D. Pa).
[7] *See* Doc. 1 at pp. 2-3; Doc. 12 (providing full names of Defendants).
[8] *See id.* ¶¶ 73-74.
[9] *See id.* ¶ 75.

and a transfer to another BMU facility."[10]  He also requests compensatory and punitive damages.[11]

Defendants move for partial dismissal of McKee's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[12]  That motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[13]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[14]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[15]

---

[10] *Id.* ¶¶ 77-78.
[11] *Id.* ¶¶ 81-82.
[12] *See generally* Doc. 14.
[13] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[14] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[15] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[16] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[17] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[18] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[19] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[20]

Because McKee proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[21] This is particularly true when the *pro se* litigant, like McKee, is incarcerated.[22]

## III. DISCUSSION

Defendants challenge the sufficiency of all Section 1983 claims against them except McKee's retaliation claim against McCusker and Anna. They also seek

---

[16] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[17] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[18] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[19] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[20] *Iqbal*, 556 U.S. at 681.
[21] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[22] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

dismissal of McKee's requests for injunctive relief. The Court will review the sufficiency of McKee's claims and requested relief in turn.

### A. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[23] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[24]

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[25] When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or

---

[23] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[24] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[25] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

5

months.[26]  However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[27]  Another approach is to demonstrate "a pattern of antagonism coupled with timing."[28]  Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[29]  Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[30]

Defendants contend that McKee has not plausibly alleged causation with respect to his retaliation claims against Lytle and Groth.  They maintain that, while McKee claims that he filed a PREA report against a nonparty prison official in May 2022, filed a grievance (No. 1012429) against Anna on December 22, 2022, and filed prior lawsuits naming McCusker and Anna as defendants, these facts in and of themselves do not plausibly allege causation for McKee's retaliation claims against Lytle and Groth.

Defendants are correct.  It is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the

---

[26]  *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).
[27]  *Id.*
[28]  *DeFlaminis*, 480 F.3d at 267.
[29]  *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).
[30]  *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

alleged perpetrator of the retaliatory adverse action.[31] Such general allegations fail to establish or even infer knowledge of the protected conduct and they likewise fail to show why a defendant would take the alleged adverse action. McKee's complaint lacks any causal connection between his protected conduct and defendants Groth and Lytle.

McKee's arguments to the contrary are unpersuasive. He primarily contends that he has plausibly alleged a pattern of antagonism that demonstrates causation.[32] But the only antagonistic incidents in his complaint that predate the alleged December 29, 2022 retaliation involve McCusker or Anna.[33] Thus, without plausibly pleading causation, McKee's retaliation claims against Groth and Lytle are fatally deficient and must be dismissed.

---

[31] *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

[32] *See* Doc. 19 at 17-19.

[33] *See, e.g.*, Doc. 1 ¶¶ 22, 23-25, 27-29, 32, 38, 40, 42, 50. Although McKee alleges in one paragraph that Lytle called him "a rat" for filing a PREA report and a lawsuit, (*id.* ¶ 20), McKee does not state when this incident occurred, nor would this single allegation establish a pattern of antagonism by Lytle.

B.   **Eighth Amendment Excessive Force**

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[34] The factors analyzed when making this inquiry include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response."[35] The Eighth Amendment, however, "does not protect an inmate against an objectively *de minimis* use of force."[36]

McKee's excessive force claim fails because the force he alleges was used against him was objectively *de minimis*. McKee alleges that Groth pulled on the restraint belt attached to his handcuffs through the "wicket" or aperture of his cell, and then the other three Defendants also "yanked" on the belt.[37] McKee avers that this pulling lasted for a total of 10 to 15 seconds (until the handcuffs were

---

[34]   *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).
[35]   *Id.* (quoting *Smith*, 293 F.3d at 649).
[36]   *Smith*, 293 F.3d at 649 (citation omitted).
[37]   Doc. 1 ¶¶ 59-61.

8

removed) and caused "intense pain" to his wrist.[38] He further asserts that this incident resulted in swelling, minor cuts, and bruising to his wrist.[39]

This minor application of force—pulling an inmate's hands through a cell-door aperture for several seconds to remove handcuffs and causing minimal injury—is the type of objectively *de minimis* force that is repeatedly held not to implicate the Eighth Amendment.[40] Thus, taking McKee's allegations regarding the use of force as true, his complaint fails to state an excessive force claim.

### C.   Official Capacity Claims

McKee sues all Defendants in their individual and official capacities.[41] However, any official capacity claim seeking monetary damages from state

---

[38] *Id.* ¶¶ 60, 63, 65.

[39] *Id.* ¶ 65.

[40] *See, e.g.*, *Dockery v. Beard*, 509 F. App'x 107, 112 (3d Cir. 2013) (nonprecedential) (finding *de minimis* force used when prisoner "suffered slight abrasions to his wrist after officers pulled the tether attached to [his] handcuffs [through the cell door slot] to access the cuffs for removal"); *Fears v. Beard*, 532 F. App'x 78, 82 (3d Cir. 2013) (nonprecedential) (affirming district court's finding that *de minimis* force was used when handcuffing prisoner even though he alleged experiencing "excruciating pain" from handcuffs being applied too tightly); *Washam v. Klopotoski*, 403 F. App'x 636, 640 (3d Cir. 2010) (nonprecedential) (finding that, even if force was unnecessary, minimal force applied by corrections officer of "slamming [inmate] to the ground[] and handcuffing him," which caused "abrasions" on inmate's shoulder and knee, was *de minimis*); *Reyes v. Chinnici*, 54 F. App'x 44, 47-49 (3d Cir. 2002) (nonprecedential) (finding that a single punch to a handcuffed prisoner was *de minimis* force); *Jamison v. Varano*, No. 1:12-CV-1500, 2015 WL 4662696, at *7 n.3 (M.D. Pa. Aug. 6, 2015) (finding *de minimis* force where inmate was pushed into a wall and restrained in handcuffs, with no discernable injury); *Acosta v. McGrady*, No. 96-CV-2874, 1999 WL 158471, at *8-9 (E.D. Pa. Mar. 22, 1999) (sharply pulling inmate's handcuffed hands behind his back and pushing him into a wall was *de minimis*); *Gutridge v. Chesney*, No. 97-CV-3441, 1998 WL 248913, at *3 (E.D. Pa. May 8, 1998) (finding *de minimis* force where inmate was handcuffed and pushed against a wall, suffering a small scratch on his cheek as a result).

[41] *See* Doc. 1 at p. 3 ¶ 5.

officials is barred by Eleventh Amendment sovereign immunity. Furthermore, as to McKee's requests for prospective injunctive relief, those claims are moot.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[42] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[43] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[44] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[45]

McKee seeks compensatory and punitive damages. To the extent those damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity. McKee also seeks various forms of injunctive relief against SCI Rockview officials, such as ending the

---

[42] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[43] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[44] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[45] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

alleged retaliation and transferring him out of SCI Rockview. Those claims for relief must be dismissed as moot because McKee has already been transferred to a different state correctional institution.[46] Finally, McKee's single claim for a declaration that his constitutional rights were violated is retrospective, rather than prospective, in nature. Thus, all official capacity claims must be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). This case will proceed on McKee's First Amendment retaliations claims against McCusker and Anna in their individual capacities only. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[46] *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993). McKee also seeks to expunge the misconduct issued by Groth but, as explained above, he has failed to state a retaliation claim with respect to Groth and thus his claim for injunctive relief related to this misconduct fails as well.